2012 BNH 003
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                              Bk. No. 11-12767-JMD
                                                                    Chapter 13
Donald Richall and Selena Richall,
                    Debtors


*Kelly L. Ovitt Puc, Esq.*
*Cornell and Ovitt Puc, PLLC*
*Concord, New Hampshire*
*Attorney for Debtor*

*Lawrence P. Sumski, Esq.*
*Manchester, New Hampshire*
*Chapter 13 Trustee*


## MEMORANDUM OPINION

### I.  INTRODUCTION

Lawrence P. Sumski, the chapter 13 trustee (the "Trustee"), filed a motion to dismiss the case (Doc. No. 18) (the "Motion to Dismiss") on the grounds that, notwithstanding the Debtors' compliance with 11 U.S.C. § 1325(b),[1] the Debtors' Chapter 13 Amended Plan dated December 8, 2011 (Doc. No. 24) (the "Plan") was not filed in good faith under § 1325(a)(3) because it does not provide plan payments as calculated pursuant to § 1325(b)(2).  The Debtors counter that their failure to dedicate their entire monthly disposable income to the Plan alone is insufficient to demonstrate lack of good faith when the Plan proposes to pay creditors in full.  After notice and

---

[1] Unless otherwise indicated, in this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, effective in cases commenced on or after October 17, 2005.

a hearing, the Court took confirmation of the Debtors' Plan and the Trustee's Motion to Dismiss under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The parties do not dispute the material facts involved in this case.  The Debtors filed for chapter 13 bankruptcy on July 19, 2011.  They submitted their Plan on December 30, 2011.  The Debtors' Schedules I and J show a monthly net income of $886.42.  Additionally, Form B22C provides that the Debtors are "above median" debtors.  Accordingly, their disposable income is determined under § 1325(b)(2) and (3).  That calculation provides that the Debtors' monthly disposable income is $1,756.21.  In the Plan, the Debtors propose to make monthly plan payments of $835.00 over a term of five months and $855.00 over a term of fifty-five months for a total plan commitment period of sixty months.  The Debtors' proposed plan payments provide for full payment of their unsecured claims; however, the plan payments are substantially lower than the Debtors' monthly disposable income.  If the Debtors proposed a plan that committed their entire monthly disposable income of $1,756.21, that plan would provide for full payment of their unsecured claims over a period of approximately thirty-months or one-half of the term in their Plan.

**III. DISCUSSION**

Section 1325(b)(1) provides that:

[i]f the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan --
    (A) the value of the property to be distributed under the plan on account of such claims is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). The Trustee objects to confirmation of the Plan and moves to dismiss the case because he believes the Plan should provide for payment of all of the Debtors' monthly disposable income, or $1,756.21 per month, until the expected allowed claims are paid in full, which will be sooner than stretching payments over sixty months as proposed in the Debtors' Plan. The Trustee also argues that the Debtors lack good faith under § 1325(a)(3) because they are failing to use their best efforts and failing to protect creditors against the time value of deferring payment of their claims. The Debtors disagree and contend that the Trustee's view would require debtors to satisfy both § 1325(b)(1)(A) and (B) thereby rendering § 1325(b)(1)(A) superfluous.

    **A. BAPCPA and Section 1325(b)**

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 1322(d) specified that a "plan may not provide for payments over a period that is longer than three years, unless the court, <u>for cause</u>, approves a longer period, but the court may not approve a period that is longer than five years" regardless of whether the

3

debtor was above or below median.² 11 U.S.C. § 1322(d) (1994) (emphasis added).  Prior to the enactment of BAPCPA, § 1325(b) prohibited approval of a chapter 13 plan over the objection of the trustee or the holder of an allowed claim unless the debtor was paying all unsecured claims in full, or was paying all of the debtor's disposable income over the full term of the plan.  11 U.S.C. § 1325(b) (1998).  Accordingly, the Court would have no cause to approve a plan term longer than three years for any debtor, regardless of the amount of disposable income, if the debtor could pay unsecured creditors in full within three years.

After the enactment of BAPCPA, the Bankruptcy Code differentiated the minimum and maximum term for a chapter 13 plan, based on the amount of a debtor's disposable income, by adding subsections (d)(1) and (d)(2) to § 1322.  Thus, in BAPCPA, Congress changed the manner in which the mandatory term of a chapter 13 plan is determined to ensure that debtors who could afford to do so (i.e. debtors with above median disposable income) paid more to their creditors.

In the case of above median debtors, § 1322(d)(1) now proscribes that "the plan may not provide for payment over a period that is longer than 5 years."  11 U.S.C. § 1322(d)(1).  In effect, BAPCPA eliminated any minimum term of a plan for above median debtors.  All above median debtors are now subject to a uniform term of five years for a chapter 13 plan with only one exception: the term of the plan, or the commitment period, <u>may</u> be less than five years if creditors are paid in full.  11 U.S.C. § 1325(b)(1)(A) and (b)(4).  However, BAPCPA did not change the minimum or maximum plan term for below median debtors not paying creditors in

---

² Prior to the enactment of BAPCPA, the terms "above median" and "below median" were not part of the Bankruptcy Code.  All debtors, regardless of the amount of their disposable income, were subject to the same statutory limitations on the minimum and maximum term for a chapter 13 plan.

4

full.  It remains a minimum of three years, absent cause for a longer term, which cannot exceed five years, unless creditors can be paid in full in a shorter period of time.  11 U.S.C. §§ 1322(d)(2) and 1325(b)(1)(B); see also 11 U.S.C. § 1325(b)(4)(B).  Consequently, after BAPCPA, courts may deny confirmation of a chapter 13 plan proposed by a below median debtor, which stretches beyond a three year period and pays creditors in full but does not commit all disposable income, because a court could find that no cause exists to extend the plan longer than three years when a debtor can payoff creditors within the commitment period.  See 11 U.S.C. § 1322(d)(2)(C).  After BAPCPA, the same is not true for above median debtors.

Section 1325(b) was substantially changed by BAPCPA to create a bright line test to determine whether a debtor is committing sufficient income to the plan.  In re Jones, 374 B.R. 469, 469 (Bankr. D.N.H. 2007).  "Section 1325(b)(2) was amended to alter the method of determining a debtor's income and § 1325(b)(3) was added to require above median debtors to calculate their reasonably necessary expenses using the means test formula in § 707(b)(2)(A) and (B)."  Id.  Section 1325(b)(1) requires compliance with subsection (A) or (B), but not both.  Jones, 374 B.R. at 469.  Accordingly, above median debtors now have an election to either pay all of their disposable income for five years, or until creditors are paid in full, § 1325(b)(1)(B), or to pay less than their disposable income over five years, if such lower payments will pay unsecured creditors in full. 11 U.S.C. § 1325(b)(1)(A).  The Debtors' Plan provides for payment of all unsecured claims in full during a five year term through payments of approximately one-half of their disposable income.  Thus, the Debtors' Plan complies with § 1325(b)(1)(A).  While the Debtors could pay off their unsecured creditors in a shorter period of time if they contributed all of their monthly disposable income to plan payments, they are not required to do so under the plain unambiguous language of the Bankruptcy Code.

The Court believes that this result is contrary to the intent of Congress in enacting BAPCPA. The Court also does not understand why a debtor would elect to remain in a chapter 13 proceeding any longer than necessary. However, this result is mandated by the clear and unambiguous language in §§ 1322(d)(1) and 1325(b)(1) of the Bankruptcy Code. If this statutory anomaly does not reflect the intent of Congress, it is the responsibility of Congress, not the courts, to correct the statute. The Court does not have the authority to require above median debtors to reduce their plan term from five years, if they are paying all unsecured claims in full.

### B.  Good Faith under 11 U.S.C. § 1325(a)(3)

The Trustee contends that the Debtors' Plan was filed in bad faith because the Debtors do not commit all of their disposable income to the Plan. Pursuant to § 1325(a)(3), a chapter 13 plan is entitled to confirmation if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Debtors bear the burden of demonstrating that a plan has been proposed in good faith. Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 2011 (B.A.P. 1st Cir. 2005). "The term 'good faith' has been left undefined. In the First Circuit, good faith is determined on a case-by-case basis using the totality of the circumstances test." In re Culcasi, No. 10-14735-JMD, 2011 WL 4005451, at *5, *6 (Bankr. D.N.H. Sept. 7, 2011) (citing Sullivan, 326 B.R. at 204). Courts generally employ a fact-sensitive assessment of whether a plan was proposed in good faith in which they consider the following non-exclusive factors:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

6

Sullivan, 326 B.R. at 212.  In employing the totality of the circumstances analysis, courts do not place too much weight on any single factor, but rather examine how a number of factors in any given case operate together to expose a plan proposed in bad faith.  In re O'Neill Miranda, 449 B.R. 182, 195 (Bankr. D.P.R. 2011) see also In re Trikeenan Tileworks, Inc., Nos. 10-13725-JMD, 10-13726-JMD, 10-13727-JMD, 2011 WL 2898955, *6, *8 (Bankr. D.N.H. Jul. 14, 2011) (interpreting a good faith plan to achieve results consistent with the purposes and objectives of the Code).  Based on the factors of the totality of the circumstances test, finding that a proposed chapter 13 plan is lacking in good faith should be reserved for cases in which debtors exhibit serious misconduct or abuse or unfair manipulation of the Code.

The meaning of "good faith" should not be expanded beyond the meaning intended by Congress.  In re Keach, 243 B.R. 851, 867-68 (B.A.P. 1st Cir. 2000).  Since Congress specifically addresses a debtor's ability to pay and the commitment of disposable income in § 1325(b), a "good faith" analysis under § 1325(a)(3) need not require consideration of the amount of a debtor's payments unless the proposed payments otherwise contribute to a finding of serious misconduct or abuse or unfair manipulation of the Code.  See id. 243 B.R. at 867-70 (discussing the meaning of "good faith" after Congress' creation of § 1325(b)(1) and (b)(2)).  To do so would require this Court to create yet another test to determine the appropriate plan length for debtors who can afford to pay unsecured creditors in full over a term less than the applicable commitment period.  The application of any such test in this case would necessarily result in a judicially created amendment to the provisions of § 1325(b)(1).  This Court does not have the authority to create any such amendment.  Any such amendment necessary to implement the intent of Congress is within the sole authority of Congress to impose.

The Trustee has not alleged any facts to suggest that the Debtors have inaccurately stated their debts and expenses, that the Debtors have been less than honest in the bankruptcy process, or that the Debtors have misled the Court.  Although the Court understands the Trustee's concerns regarding the time value of money and the risks to creditors in a stretched out plan, Congress has not indicated that such factors be considered under a § 1325(a)(3) "good faith" analysis.  See 11 U.S.C. § 1325(a)(4) (evaluating time value issues as part of "best interests of creditors test").  Because the Court cannot find any lack of good faith in the proposal of Debtors' Plan, the Trustee's Motion to Dismiss shall be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Trustee's Motion to Dismiss shall be denied, and the Court shall confirm the Debtors' Plan.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:  May 11, 2012          /s/ J. Michael Deasy
                             J. Michael Deasy
                             Bankruptcy Judge